UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R R A MANAGEMENT, LLC<br><br>Plaintiff<br><br>-against-<br><br>MARVIN JEMAL, LAWRENCE JEMAL, CHARLES GAMMAL, THE UNDERGROUND GROUP, LLC, USEFUL ENTERPRISES, LLC, and IT'S USEFUL, LLC<br><br>Defendants,<br>_____<br><br>IT'S USEFUL, LLC,<br><br>    Counter-claim and Cross-Claim Plaintiff<br><br>    v.<br><br>R R A MANAGEMENT, LLC, and MARVIN JEMAL,<br><br>    Counter-claim and Cross-Claim Defendants<br><br>and<br><br>USEFUL HOME PRODUCTS, LLC, d/b/a J. MILES CO., ISAAC ASHKENAZIE, and USEFUL ENTERPRISES, LLC.<br><br>    Additional Counter-claim and Cross-Claim Defendants | Case No. 18-cv-00792<br><br><br><br><br><br><br><br><br><br>**AMENDED COMPLAINT** |

Plaintiff, by its attorneys, Amends its Complaint and alleges as follows:

## NATURE OF THE ACTION

1. In this action, Plaintiff seeks a Declaration that it is the sole owner of the USEFUL trademark (Registration No. 4,634,396) ("the Mark"), and that Defendants infringed the Mark and Plaintiff's common-law right in the USEFUL trademark.

2. In the event the Court determines that Plaintiff is not the owner of the Mark, Plaintiff seeks a declaration that the Mark should be cancelled due to Defendants' fraudulent registration and assignments of the Mark; and their failure to police/supervise the Mark.

3. Plaintiff also seeks declaratory judgment that Defendants have no common law rights or ownership in the "USEFUL" trademark.

## THE PARTIES

4. Plaintiff, (and counter-claim Defendant) RRA MANAGEMENT, LLC, ("RRA") is a NEW YORK corporation located at 57 West 38th Street, Suite 402, NY, NY 10018.

5. RRA is owned by Isaac Ashkenazie ("Mr. Ashkenazie").

6. One of RRA's ventures is selling kitchenware and housewares, primarily on Amazon.com, under a D/B/A of JMilesCo ("JMILES").

7. Defendant Marvin Jemal is a resident of Brooklyn, New York, and is or was the owner of THE UNDERGROUND GROUP, LLC ("TUG").

8. Upon information and belief, TUG is a New York corporation.

9. Marvin Jemal directed his attorney to filed a trademark application for the USEFUL trademark, listing TUG as the owner of the USEFUL trademark.

10. Marvin Jemal is also, or was also, the owner of USEFUL ENTERPRISES, LLC ("UE").

11. Upon information and belief, UE is a New York corporation.

12. On February 16, 2017, Marvin Jemal and TUG assigned the Mark to UE.

13. On December 14, 2017, UE and Marvin Jermal assigned the Mark to IT'S USEFUL, LLC. ("IU')

14. Defendant IU, is a New York limited liability company maintaining its principal place of business at 1385 Broadway, New York, New York.

15. Upon information and belief, Defendant Charles Gammal is an owner and manager of IU.

16. Upon information and belief, Defendant Lawrence Jemal is also an owner and manager of IU.

17. IU, filed a counter-claim against RRA and JMILES, Co.; and their owner, Mr. Ashkenazie.

18. IU's counter-claim also names Marvin Jemal, UE, and USEFUL HOME PRODUCTS, LLC, ("UHP") as counter-claim Defendants.

19. UHP is a (now-defunct) New York corporation that was set up by Marvin Jemal, Isaac Ashkenazi and other non-parties.

## JURISDICTION AND VENUE

20. The action arises under the Lanham Trademark Act, 15 U.S.C. §1051 et seq. ("the Lanham Act"), and the common law of the State of New York. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

21. This Court has jurisdiction over all the parties, because upon information and belief, they are all residents of New York.

22. Venue is proper in this District pursuant to 28 U.S.C. §1391.

## FACTUAL BACKGROUND

23. In March 2013, Abraham Ashkenazie, Isaac Ashkenazie, Elliot Ashkenazie, Marvin Jemal and Robert Grossman (the "UHP Members") met to discuss forming a company that would sell kitchenware products.

24. In April 2013, the UHP Members met with Josh White, owner of Off White Design.

25. Mr. White and his company provide branding and design consultation services.

26. At the meeting or shortly thereafter, Mr. White suggested the brand name USEFUL.

27. The UHP Members agreed to adopt USEFUL as the brand name they would use, and decided to form a corporation called USEFUL HOME PRODUCTS, LLC, ("UHP") through which the products were to be marketed/sold.

28. The UHP Members also agreed that their business model would be to try and secure large orders for their product at department stores, following which they would have the items manufactured and shipped to fulfill the order.

29. The UHP Members also agreed that Isaac Ashkenzie could use the USEFUL brand name on products he would sell on Amazon.com under his J Miles and RRA businesses.

30. The UHP Members agreed that this would be an entirely independent venture, unconnected to the UHP venture.

31. None of the parties to this action other than Mr. Ashkenazie/RRA contributed any time or capital towards RRA's USEFUL venture on Amazon.com.

32. No one, other than Mr. Ashkenazie/RRA, expected that they had any ownership interest in RRA's USEFUL venture on Amazon.com.

33. In May 2013, the UHP Members agreed that they should trademark the USEFUL brand, and it was agreed that as Marvin Jemal claimed prior experience with trademarks, he would handle the trademark application on behalf of UHP.

34. However, rather than registering the USEFUL mark under the ownership of UHP, Marvin Jemal instructed his attorney to apply for a trademark, listing the USEFUL mark under the ownership of his company-TUG.

35. The other UHP Members all believed that Marvin Jemal had registered the USEFUL mark as belonging to UHP and/or its collective members.

36. On July 19, 2013, RRA placed its first order for $43,000 worth of kitchenware products from a Hong Kong manufacturer, which, (using its D/B/A of JMILES), it began selling on Amazon.com under the USEFUL brand as of December 2013.

37. Although the UHP Members agreed that they would each hold a 20% stake in UHP, because some of the members wished to keep a low profile, the operating agreement dated August 15, 2013, listed the company as belonging to Cynthia, Elliot and Abraham Ashkenazie.

38. Abraham Ashkenazie is Issac Ashkenazie's father.

39. On August 23, 2013, Marvin Jemal forwarded an e-mail to the UHP Members, from his attorney who was asking for information needed to respond to a USPTO request for additional information. In forwarding the e-mail, to the UHP Members, Marvin Jemal wrote "lets do this correctly: this will be a very valuable trademark for generations to come".

40. In February 2014, in order to try and convince the USPTO that the USEFUL trademark had acquired secondary meaning, Marvin Jemal asked Isaac Ashkenazie to provide him with a link to all of RRA/JMILES' listings of USEFUL products on Amazon.com.

41. On September 12, 2014, Defendants Marvin Jemal and TUG filed an amendment to the trademark application, alleging actual use of the USEFUL mark in commerce.

42. This filing was fraudulent because TUG had never used the USEFUL mark in commerce.

43. Plaintiff and Isaac Ashkenazie were unaware of the fraudulent nature of this filing because they were unaware that Marvin Jemal had registered the Mark as belonging to TUG.

44. In support of the "actual use" amendment, Marvin Jemal and TUG provided the USPTO with screenshots of RRA/JMILES' Amazon.com listings of USEFUL products.

45. Ultimately, UHP never got off the ground, and never made a single sale of products bearing the USEFUL brand.

46. Although UHP was never formally dissolved, the UHP Members, including Marvin Jemal, stopped all activity with respect to the company from around October 2014, and they agreed among themselves that UHP would be informally dissolved and that the UHP members would cease trying to establish a joint company that would sell products branded with the Mark.

47. The only UHP Member who continued using the USEFUL brand between October 2014 until mid to late 2017, was Isaac Ashkenazie, who via his company RRA, continued to build up a brand recognition for the USEFUL trademark, by selling kitchenware products on Amazon.com, (using a D/B/A of JMiles).

48. Although the UHP members were aware of, and did not object to Isaac Ashkenazie, RRA and JMiles Co.'s use the USEFUL trademark, none of the UHP members ever gave Isaac Ashkenazie or RRA or JMiles a license, whether oral or written, to use the USEFUL trademark.

49. Rather, the UHP Members agreed that as a co-owner of the USEFUL trademark, and as the only one who had ever used the Mark in commerce, Isaac Ashkenazie and his companies did not require their license to continue using the USEFUL trademark in commerce.

50. Thus, when UHP and its members abandoned the USEFUL trademark in late 2014, Mr. Ashkenazie/RRA became the sole legal and equitable owner of the USEFUL trademark, as they were the only ones who had ever used the Mark in commerce, and they were the only ones continuing to use the Mark.

51. Beginning in February 2017, Marvin Jemal noticed that RRA had built up a profitable business selling USEFUL branded products on Amazon.com.

52. Marvin Jemal thus started contacting various members of the Ashkenazie family, claiming he was the true owner of the USEFUL mark.

53. As proof of his purported ownership, Marvin Jemal told the Ashkenazies that he had registered the Mark as belonging to TUG.

54.  This was how and when Plaintiff first discovered that Marvin Jemal had instructed his attorney to register the USEFUL trademark as belonging to TUG.

55.  Marvin Jemal also began contacting several of the manufacturers that Plaintiff has been working with for the last few years and told them not to work with Plaintiff anymore, telling them that he was the true owner of the Mark.

56.  Between February and December 2017, Marvin Jemal engineered a series of transfers and assignments of TUG's purported ownership of the Mark.

57.  On December 14, 2017, UE, by Marvin Jemal, transferred the ownership of the Mark to IU.

58.  In January 2018, IU's attorneys sent at least two cease and desist letters to Mr. Ashkenazie, the last of which threatened to file a trademark infringement lawsuit against him unless he confirmed in writing by January 31, 2018, that he would stop using the Mark.

59.  Upon information and belief, beginning in late 2017 or early 2018, at the direction of Charles Gammal and Lawrence Jemal, IU began selling many of the same products that RRA had been selling for years on Amazon. com and on its JMiles website.

60.  IU placed the Mark on these products, and sold them on Amazon.com and other sales channels, guaranteeing that RRA's customers and potential customers would be confused as to which company was producing which goods.

61.  IU also infringed RRA's common-law copyright, by copying (without authorization) pictures and copy contained on RRA's USEFUL-branded products.

62.  One of the photographs that IU copied from RRA displays a book and brush, which are personal items belonging to members of Isaac Ashkenazie's family.

63.  Another of the photographs that IU copied from RRA displays a hand, which is a hand of a member of Isaac Ashkenazie's family.

## **FIRST CLAIM FOR RELIEF**

*(Declaratory Judgment that Plaintiff is the Sole Owner of Trademark Registration No. 4,634,396)*

64. Plaintiff repeats and re-alleges the prior allegations set forth in the Amended Complaint as if fully set forth herein.

65. The Declaratory Judgment Act, *28 U.S.C. §§2201-2202,* authorizes the Court to issue a declaratory judgment.

66. There is an actual and ongoing controversy between the parties that is ripe for adjudication by the Court, with respect to the ownership of the Mark.

67. Defendants Marvin Jemal/TUG/UE knowingly, and with intent to deceive and defraud the USPTO and Plaintiff, falsely stated on a trademark registration application and several additional USPTO filings that the USEFUL trademark belonged to TUG.

68. At the time Marvin Jemal/TUG/UE filed said documents with the USPTO, they knew that the USEFUL trademark did not and had never belonged to TUG.

69. As such, the acquisition of the Mark by IU was null and void and should be declared null and void by the Court.

70. Furthermore, at the time IU acquired the Mark, it knew or should have known that the USEFUL trademark had never belonged to Marvin Jemal/TUG/UE.

71. As such, the acquisition of the Mark by IU was null and void and should be declared null and void by the Court.

72. Furthermore, Plaintiff is the only entity/person that used the Mark in commerce between 2013 and 2016.

73. Furthermore, Plaintiff has used the Mark in commerce continuously from 2013 to present.

74. As such, Plaintiff is entitled to Declaratory Judgment that it is the sole legal and equitable owner of the Mark.

## **SECOND CLAIM FOR RELIEF**

*Rectification of Trademark Registration No. 4,634,396 pursuant to 15 U.S.C. §1119*

75. Upon a determination that Plaintiff is the sole legal and equitable owner of the Mark, Plaintiff seeks a certified Order from the Court, directing the Director of the USPTO to amend the registration file for Trademark Registration No. 4,634,396, to reflect that Plaintiff has been the sole owner of the Mark since July 19, 2013.

76. Alternatively, Plaintiff seeks an Order from the Court that will direct IU to immediately provide Plaintiff with the necessary documents that will allow Plaintiff to assign full ownership of the Mark from IU to itself.

### **THIRD CLAIM FOR RELIEF**

*(Trademark Infringement Under 15 U.S.C. §§1114)*

77. Plaintiff repeats and re-alleges the prior allegations of the Amended Complaint as if fully set forth herein.

78. By their unauthorized use of a mark that is identical to or substantially indistinguishable from the Mark, Defendants have traded on the Mark's goodwill and reputation.

79. Defendants' unauthorized use of the Mark constitutes counterfeiting and infringement of a federally registered trademark and has likely confused and deceived customers into erroneously believing that Defendants and their merchandise are associated with and/or authorized by Plaintiff.

80. Plaintiff has never authorized or otherwise consented to Defendants' use of the Mark in any manner.

81. The acts and conduct of Defendants complained of herein constitute willful and deliberate counterfeiting and infringement of the Mark, in violation of Section 32 of the Lanham Act, 15 U.S.C. §§1114.

82. Plaintiff has been damaged by Defendants' willful, unauthorized use of the Mark.

83. Plaintiff seeks statutory damages, attorneys fees and costs of this action pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM FOR RELIEF

*(Trademark Counterfeiting Under Sections 32, 34, and 35, of the Lanham Act, 15 U.S.C. §§1114(l)(b), 1116(d), & 1117 (b)-(c))*

84. Plaintiff repeats and re-alleges the prior allegations set forth in the Amended Complaint as if fully set forth herein.

85. Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's sole rights in the Mark, Defendants have distributed, advertised, offered, for sale and/or sold counterfeit products to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce.

86. Defendants' counterfeit products reproduce, counterfeit, copy, and colorably imitate the Mark, or display spurious designations that are identical with, or substantially indistinguishable from the Mark. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendants' counterfeit products, which are likely to cause confusion, or to cause mistake, or to deceive.

87. Defendants' unauthorized use of the Mark was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and that this would deceive consumers into believing they were purchasing authorized merchandise bearing the true and legitimate Mark. Defendants' actions constitute willful counterfeiting of the Mark in violation of 15 U.S.C. §§1114(l)(b), 1116(d), & 1117 (b)-(c)).

88. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages.

89. Plaintiff therefore seeks statutory damages, plus attorneys' fees, plus punitive damages.

## FIFTH CLAIM FOR RELIEF

*(Unfair Competition and False Designation of Origin Under 15 U.S.C. §1125(a))*

90. Plaintiff repeats and re-alleges the allegations set forth in the Amended Complaint as if fully set forth herein.

91. Plaintiff owns all right, title and interest in and to the Mark and holds the exclusive rights to market and sell clothing bearing the Mark.

92. Defendants' conduct as alleged herein, constitutes a false designation of origin as such conduct is likely to cause confusion or to deceive consumers as to the origin, sponsorship, affiliation, connection and/or association of the Mark, with Defendants.

93. Defendants' conduct is calculated and intended to deceive and is likely to deceive consumers into believing that they are purchasing products produced by Plaintiff. Defendants' products that bear the Mark does not originate from Plaintiff or have Plaintiff's approval.

94. Defendants are capitalizing on and profiting from the likely consumer confusion between their infringing products and Plaintiff's products bearing the Mark.

95. The foregoing acts of Defendants constitute unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

96. Plaintiff is entitled to monetary damages in an amount to be proved at trial.

## SIXTH CLAIM FOR RELIEF

*(Cancellation of the Mark Pursuant to 15 U.S.C. § 1064 and 15 U.S.C. §1125(c)(1))*

97. Plaintiff repeats and re-alleges the allegations set forth in the Amended Complaint as if fully set forth herein.

98. If the Court determines that Plaintiff is not entitled to the relief set forth in the first two Claims for Relief, then Plaintiff seek the alternative relief as set forth below.

99. Defendants Marvin Jemal/TUG/UE knowingly, and with fraudulent intent made materially false statements on the application for the Mark.

100. Specifically, Defendants Marvin Jemal and TUG, deliberately and with fraudulent intent, listed the owner on the application for the USEFUL trademark as TUG, when the owner

should have been listed as Abraham Ashkenazie, Isaac Ashkenazie, Elliot Ashkenazie, Marvin Jemal and Robert Grossman. Alternatively, the owner should have been listed as UHP.

101. Furthermore, Defendants Marvin Jemal and TUG, deliberately and with fraudulent intent, filed a statement of actual use on September 12, 2014. The statement was fraudulent because TUG had never used the USEFUL mark in commerce.

102. The Mark should also be cancelled because Defendants Marvin Jemal/TUG/UE abandoned the Mark.

103. Specifically from the time they applied for registration of the Mark until they assigned the Mark to IU in December 2017, they never used the Mark in commerce, or in any manner.

104. The Mark should also be cancelled because to the extent Defendants Marvin Jemal/TUG/UE ever owned the Mark, they failed to supervise or oversee the Mark in any manner.

105. Furthermore, at the time IU acquired the Mark, it knew or should have known the facts alleged in this Amended Complaint, including but not limited to the facts alleged in this Claim for Relief.

106. As such, IU cannot claim they will be harmed by the cancellation of the Mark.

107. As such, Plaintiff seek an Order from the Court cancelling the Mark and enjoining Defendants from any further use of the USEFUL trademark.

## SEVENTH CLAIM FOR RELIEF

(*Civil Liability for False and/or Fraudulent Registration pursuant to 15 U.S.C. §§1120*)

108. Plaintiff repeats and re-alleges the allegations set forth in the Amended Complaint as if fully set forth herein.

109. Defendants procured the registration and assignment of the Mark through fraud and have used this as their basis to send Plaintiff baseless cease and desist letters, which

threatened litigation. Plaintiff has therefore been harmed and damaged in an amount to be proven at trial, including but not limited to attorneys' fees.

110. Because Plaintiff has incurred damages as a result of Defendants' fraudulent registration, it seeks damages, plus attorneys' fees.

### EIGTH CLAIM FOR RELIEF

(Attorneys fees pursuant to *15 U.S.C. §§1117(a))*

111. Plaintiff repeats and re-alleges the allegations set forth in the Amended Complaint as if fully set forth herein.

112. Defendants procured the registration and assignment of the Mark through fraud and have used this as their basis to send Plaintiff baseless cease and desist letters, which threatened litigation. Plaintiff has therefore been harmed and damaged in an amount to be proven at trial, including but not limited to attorneys' fees.

113. As a result of Defendants' bad-faith conduct, this case falls within the exceptions set forth in 15 U.S.C. §§1117(a), and Plaintiff is therefore entitled to an award of its attorneys' fees.

### NINTH CLAIM FOR RELIEF

(Tortious Interference with Plaintiff's Business Relationships)

114. Plaintiff repeats and re-alleges the allegations set forth in the Amended Complaint as if fully set forth herein.

115. Plaintiff had a reasonable expectation of continued business with its manufacturers, many of which have been doing business with it for several years.

116. Defendants have interfered with Plaintiff's reasonable expectation of continued business using wrongful means, i.e., including by wrongfully telling them that they are the rightful owner of the Mark.

117. Defendants' actions have caused or threaten to cause irreparable harm to Plaintiff, including but not limited to the injury to its goodwill, reputation, competitive advantage, revenues and profits which are impossible to accurately and fully calculate.

118. As such, Plaintiff is entitled to damages, in an amount to be determined at trial, including but not limited to Plaintiff's losses sustained as a result thereof, as well as attorney's fees and costs.

119. Plaintiff is also entitled to punitive damages in that the Defendants' conduct was willful, wanton and malicious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. Declaratory Judgment that Plaintiff is the sole owner of the Mark.

2. An Order directing the Director of the USPTO to amend registration No. 4,634,396 to reflect that Plaintiff has been the sole owner of the Mark since July 2013; or an Order directing IU to provide Plaintiff with the necessary documents to enable Plaintiff to assign the ownership of the Mark from IU to Plaintiff.

3. Statutory damages for Defendants' infringement and counterfeiting of the Mark.

4. An injunction prohibiting Defendants from further use of the Mark.

5. Attorney's fees and costs.

If the Court declines to provide the relief sought in items 1-2, then in the alternative

6. An Order directing the cancellation of registration No. 4,634,396;

7. Damages in an amount still to be determined at trial;

8. Attorney's fees and costs;

9. An injunction prohibiting Defendants from further use of the Mark;

      10. Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

Dated: Brooklyn, New York
      April 15, 2018

                              Lazar, Grunsfeld Elnadav, LLP

                              By: _____/GG/_____
                                 Gerald Grunsfeld
                                 Attorneys for Plaintiff
                                 1795 Coney Island Avenue
                                 Brooklyn, NY 11230
                                 (718) 947-7476
                                 Gerry@LGELaw.com